760 P.2d 1207

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Dave CARMAN,
Defendant–Appellant.**

**No. 16344.**

Court of Appeals of Idaho.

Aug. 31, 1988.
Petition for Review Granted
Dec. 28, 1988.

August H. Cahill, Jr., Deputy Ada County Public Defender, for defendant-appellant.

Jim Jones, Atty. Gen., Michael Henderson, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

James Carman was convicted by a jury of committing forcible rape. The district court sentenced Carman to a ten-year inde-terminate term. Carman appeals from the judgment of conviction and from the final order denying his I.C.R. 35 motion to reduce the sentence. The issues on appeal are whether the district court abused its discretion in not granting a continuance of the trial date so Carman could substitute private counsel of his choice for court-appointed counsel, and whether the court abused its discretion in denying Carman's Rule 35 motion. For reasons explained below, we affirm.

## I. RIGHT TO COUNSEL

Following his arrest in August 1984, Carman retained private counsel to represent him. Carman's attorney represented him through the early stages of the criminal proceedings, including the preliminary hearing. In October a trial date was set for March 12, 1985.

In January 1985, Carman's attorney filed a motion to withdraw as counsel, citing Carman's failure to keep in contact with counsel and Carman's failure to pay counsel. Carman's attorney was allowed to withdraw. On January 21, after Carman filed an affidavit of indigency, a public defender was appointed as Carman's counsel. The March 12 trial date was confirmed.

On February 25, the public defender filed a motion to vacate the March 12 trial date because Carman was attempting to retain private counsel and because the public defender was not prepared for trial. The motion was denied. Later, however, the prosecutor and the public defender agreed to request that the trial date be reset for March 26, an open date on the calendar. The court agreed to the new trial date.

The public defender, on March 12, filed another motion to postpone the trial. Present at the hearing on this motion was an attorney Carman had asked to represent him. The private attorney expressed a willingness to represent Carman, though no formal arrangements had been made, but only on the condition that trial be rescheduled for late April or early May. Carman also expressed his desire to have pri-

vate counsel represent him. Finally, the public defender asked for more time to prepare for trial. The court denied the motion for a continuance and the private attorney apparently decided he could not represent Carman.

On March 26, yet another motion to vacate was pursued by the public defender. Evidence was presented that he had not had sufficient time to adequately prepare for trial. The trial court accepted this showing and vacated the trial date, rescheduling it for May 7. The trial was then conducted, resulting in the jury's verdict of guilty. On appeal, Carman contends the refusal to grant the March 12 motion for a continuance constituted reversible error, denying him his right to counsel.

■ A decision to grant or to deny a continuance rests within the sound discretion of the trial court. *State v. Ward*, 98 Idaho 571, 569 P.2d 916 (1977). However, the trial court does not have unbridled discretion. Because the highly important right to counsel is at issue, we will independently review the trial court's decision. *See, e.g., State v. Stuart*, 113 Idaho 494, 745 P.2d 1115 (Ct.App.1987). Trial court discretion is abused if denying a continuance results in abridgement of an accused's right to counsel. *In re Kinley*, 108 Idaho 862, 702 P.2d 900 (Ct.App.1985).

■ The right to counsel is guaranteed by the sixth amendment to the United States Constitution and by article one, section 13 of the Idaho Constitution. This right is not absolute. It does not necessarily include the right to counsel of one's own choosing. *State v. Clayton*, 100 Idaho 896, 606 P.2d 1000 (1980). It does, however, entitle a criminal defendant to reasonably competent counsel. *State v. McCabe*, 101 Idaho 727, 620 P.2d 300 (1980).

■ Moreover, an accused's right to counsel does not wholly displace the judicial objective of effective court management.

Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L.Ed.2d 921, 84 S.Ct. 841 [849] (1964).

*Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). Therefore, a request for new counsel should be examined with the rights and interests of the defendant in mind, tempered by exigencies of judicial economy. *In re Kinley, supra; State v. LaGrand*, 152 Ariz. 483, 733 P.2d 1066 (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Several factors have been identified for use in making such an examination: the timing of the motion; the requested length of delay, including whether the delay is an attempt to manipulate the proceedings; the number, if any, of similar continuances sought by the defendant; inconvenience to witnesses; any prejudice to the prosecution; whether an irreconcilable conflict exists between the accused and counsel; and the qualifications possessed by present counsel. *In re Kinley, supra; State v. LaGrand, supra.*

■ Carman has not contended that the public defender was incompetent or that an irreconcilable conflict existed between Carman and the public defender. The first motion to vacate came one month after the public defender had been appointed and two weeks prior to the scheduled trial. The motion also was made following the expiration of the twenty-day period provided to Carman for obtaining new counsel to replace the attorney who had withdrawn. Likewise, the second motion to vacate came two weeks prior to the scheduled trial. These motions are not *per se* untimely, but the timing is a factor to consider.

The March 12 motion to vacate requested a delay of up to two months. The reason

for the requested delay was two-fold: first, Carman hoped to obtain private counsel; and second, the public defender needed more time to prepare for trial. The prosecution presented evidence that the victim would be highly inconvenienced by such a delay, resulting in a probable prejudice to the prosecution of the charged offense. There was some testimony presented at the motion hearing indicating Carman may have sought the delays in an attempt to manipulate the proceedings.

The court noted how congested the trial calendar was in April and May. The prosecutor pointed out that the public defender had now been representing Carman for two months, suggesting there had been sufficient time to prepare for trial.

■ In light of those circumstances, we cannot say the trial court was arbitrary or unreasonable in denying a continuance. We hold that an accused's desire to substitute chosen representation for appointed counsel alone is not a compelling reason for delaying trial.

Carman points out that the trial court later granted the third motion to vacate, delaying the trial until May. This was based upon the public defender's evidence showing inadequate preparation time for the trial. The public defender reportedly did not become fully involved in the case until the private counsel issue was settled on March 12. Moreover, the public defender was burdened with a heavy load of other criminal trials involving serious offenses at about the same time. Further, the public defender had only recently received copies of reports in Carman's case, made by several witnesses for the prosecution, and consequently had insufficient time to review these reports.

The granting of this final motion does not prove the trial court abused its discretion in denying the earlier motions to vacate. Trial judges may be savants, but they definitely are not seers. With the benefit of hindsight the trial court could have granted the motion made on March 12 without a sacrifice of effective court management. However, the same hindsight reveals that Carman was not, in fact, denied a delay of trial to allow preparation by counsel. Consequently, by denying the earlier motions the trial court did not abridge Carman's right to counsel.

## II. RULE 35 MOTION

On August 22, 1985, the court sentenced Carman to the custody of the State Board of Correction for an indeterminate ten-year term. The court expressly applied the factors under I.C. § 19–2521 in making its determination on whether to impose imprisonment or grant probation. The court concluded probation was inappropriate at the time.

■ Pursuant to I.C. § 19–2601(4) the court exercised its discretion to retain jurisdiction over Carman for 120 days to evaluate the possibility of probation. The evaluation purpose was frustrated, however, when Carman was transferred from the correctional facility in Orofino to the main prison site in Boise, and later to the Ada County jail. Carman was transferred to Boise because of the possibility that he would be used as a witness in a criminal trial. Carman was then transferred to the county jail to remove him from harm threatened by an inmate at the main prison. The upshot of these transfers was the lack of a meaningful evaluation of Carman by correction officials.

In November, toward the end of the 120 day retained jurisdiction period, but within 120 days of the judgment, Carman filed a motion under I.C.R. 35. Although the rule speaks to reduction of sentence, Carman in effect asked for reconsideration of the sentence because the lack of a meaningful evaluation had unfairly prejudiced his opportunity for probation. In the first hearing on this motion Carman presented favorable information about his rehabilitation progress. The court also ordered and received an updated sentencing report.

During later hearings on this motion, evidence was presented tending to inculpate Carman in the making of a threatening telephone call to his sister, who was a close friend of the young victim. The telephone call allegedly contained threats of violence toward the sister and toward the

victim. The evidence concerning this call was hotly contested.

On January 6, 1986, at the close of the final hearing, the court determined that a preponderance of the evidence established that Carman had made the threatening telephone call. The court then relinquished its jurisdiction, finding Carman was no longer a worthy candidate for probation.[1]

There is no dispute that the ten-year indeterminate sentence imposed on Carman was lawful. It is well within the maximum sentence for the crime of rape, which permits imprisonment for life. I.C. § 18–6104. A motion to reduce an otherwise lawful sentence is addressed to the sound discretion of the sentencing court. *State v. Arambula,* 97 Idaho 627, 550 P.2d 130 (1976). Our task in this case is to examine the record of the original sentencing proceeding, together with information subsequently presented in support of the Rule 35 motion, to evaluate whether the sentence imposed was for any reason unduly severe. *State v. Araiza,* 109 Idaho 188, 706 P.2d 77 (Ct.App.1985). The criteria for evaluating rulings on motions to reduce sentences under Rule 35 are the same as those applied in determining whether the original sentence was excessive. These familiar criteria are found in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

As noted, Carman's plea for leniency was urged upon the grounds of the lack of a meaningful evaluation and upon the sentencing court's original indication that probation might be a viable option. The record shows that the district court originally had a favorable outlook for Carman. Nonetheless, the court at the time of sentencing was concerned with Carman's apparent lack of remorse for the crime, Carman's convictions for battery, and Carman's continued assertion that no crime had occurred, insisting he was simply a victim of circumstance. With the record containing both favorable and unfavorable evidence, the court—when entering judgment—was skeptical about probation and therefore ordered further evaluation. The judge's decision was crystallized by the subsequent threatening telephone call. The court stated:

> The blatant threat while on his [Carman's] rider is consistent with the attitude and conduct of the defendant at the time of the crime and at trial, when he unsuccessfully tried to persuade the jury that he, ... was the victim. Accordingly, I do not feel I erred in my conclusion that [the] defendant was not a good candidate for probation.

Carman maintains the court erred in finding that he made the telephone call. He points to evidence tending to exculpate him, including his sister's later testimony where she recanted her earlier testimony that Carman had made the telephone call. Carman's position puts in question the weight of the evidence and the credibility of the witnesses. We will not substitute our opinion of the weight of the evidence or the credibility of a witness for that of the trial court. *See State v. Phillips,* 113 Idaho 176, 742 P.2d 431 (Ct.App.1987); *Salazar v. Tilley,* 110 Idaho 584, 716 P.2d 1356 (Ct.App.1986).

The district court had sufficient evidence for finding Carman made the threatening telephone call. The lack of a meaningful evaluation under the retained jurisdiction program was not fatal to Carman's plea for leniency. Evidence was presented showing Carman's good conduct while incarcerated and the substantial rehabilitative support he would have if released on probation. The court, however, was concerned with Carman's threats toward the victim and rightly so. We find no error.

The record shows the court conscientiously considered the sentencing criteria when it released jurisdiction and refused to

---

1. We note a subsequent motion to reconsider was filed. A hearing was held on this motion in September 1986. At this hearing evidence was offered to refute the court's earlier conclusion that Carman had made the threatening telephone call. The court was not persuaded, and it denied this second motion.

grant probation. Indeed, we are not persuaded that the information presented at the hearing indicates the original sentence was in any way unduly severe. Having reviewed all the information available, we conclude the district court did not abuse its discretion in refusing to exercise leniency.

The judgment of conviction and the order denying the Rule 35 motion are affirmed.

WALTERS, C.J., and BURNETT, J., concur.