181 P.3d 512

STATE of Idaho, Plaintiff–Respondent,

v.

Robert Scott LIPPERT, Defendant–Appellant.

No. 33028.

Court of Appeals of Idaho.

Dec. 19, 2007.

Review Denied April 15, 2008.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge Pro Tem.

Robert Scott Lippert appeals from his judgment of conviction for sexual abuse of a child under the age of sixteen years. For the reasons set forth below, we affirm the evidentiary rulings, but remand the case for a hearing on Lippert's request for substitution of appointed counsel.

## I.

## FACTS AND PROCEDURE

In July 2005, Lippert's daughter, K.Y., reported to police that Lippert had sexually abused her when she was fifteen years old in March 1998. K.Y. stated that the incident occurred after Lippert had required her and one of her sisters, B.W., to model recently-purchased undergarments and swimsuits for him. K.Y. further alleged that after she modeled the clothing, her mother and Lippert required that she allow Lippert to give her a massage because she had complained of having a headache. K.Y. told police that Lippert next had her kneel in front of him, and he placed her head, face-down, in his lap. Lippert then allegedly rubbed her scalp, shoulders, arms, and back for fifteen or twenty minutes, and she could feel that his penis became erect while her face was in his lap. Based on K.Y.'s report of this incident, the state charged Lippert with sexual abuse of a child under the age of sixteen years. I.C. § 18–1506.

Lippert requested and was provided with a public defender. At a pre-trial hearing, the district court rejected a request from Lippert to replace his public defender with another court-appointed attorney. The public defender ultimately represented Lippert at trial despite Lippert's subsequent indication, made on the day of trial just prior to jury selection, that he did not want the appointed public defender to represent him.

Also prior to trial, the state filed a notice of intent to present evidence of prior sexual abuse by Lippert, and the district court held pre-trial hearings on the admissibility of such evidence. At one hearing, the state presented testimony of other alleged incidents of physical and sexual abuse from three of Lippert's daughters, K.Y., B.W., and T.H., as well as two of Lippert's former step-daughters, M.H. and S.U., and his former step-son, D.K. At a subsequent hearing, the state sought to introduce testimony of nine separate acts of abuse by Lippert. The district

court excluded testimony that it found was too vague or remote from the charged conduct with K.Y., but ruled admissible testimony on several incidents where Lippert had sexually abused his pubescent daughters and step-daughters. The state ultimately introduced at trial most of the testimony that the district court had determined to be admissible.

A jury found Lippert guilty as charged. The district court sentenced Lippert to a unified term of fifteen years, with a minimum period of confinement of six years. Lippert appeals, asserting that the district court erred by admitting prior bad acts evidence at his trial and by conducting an inadequate inquiry into his complaints about his court-appointed counsel.

## II.

## ANALYSIS

### A. Prior Bad Acts Evidence

Prior to trial, the state sought to introduce evidence of nine separate acts of sexual and physical abuse allegedly committed by Lippert upon his children and step-children. Of those nine incidents listed by the state, the district court ruled that it would admit testimony by M.H. and T.H. that they had seen Lippert massage S.U.'s breasts; testimony by S.U. that Lippert had touched her breasts while giving her a massage; testimony from K.Y. and B.W. that they had seen Lippert masturbate under his bathrobe in their bedroom one night; K.Y's testimony that Lippert repeatedly massaged her naked breasts while she was sleeping; and testimony from K.Y. and M.H. that they were required to model bras and underwear for Lippert.[1]

The district court determined that these incidents were relevant because they demonstrated Lippert's common scheme or plan to exploit and sexually abuse his pubescent daughters and step-daughters and demonstrated that Lippert did so with the intent to

---

1. Instances of abuse ruled inadmissible by the district court included S.U.'s testimony that she was removed from a bathtub while naked and spanked; B.W.'s testimony that Lippert walked into the bathroom while she was in the shower;

testimony from M.H. and K.Y. that Lippert made comments about their beautiful bodies and beautiful breasts; and testimony from all of the witnesses of alleged physical abuse.

satisfy his sexual desires. The district court also ruled that the probative value of testimony it deemed relevant outweighed the danger of unfair prejudice to Lippert because it was limited to incidents that were similar to the charged incident and were not too remote or vague. With the exception of S.U.'s own testimony that Lippert had touched her breasts while giving her a massage, the evidence that the district court ruled would be admissible was presented to the jury at trial. On appeal, Lippert asserts that the district court erred because the instances of other alleged sexual abuse were irrelevant and any probative value was outweighed by prejudicial effect.

■ Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct.App.1987). However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App.2002). In determining the admissibility of evidence of prior bad acts, this Court applies a two-prong analysis. First, the evidence must be relevant to a material disputed issue concerning the crime charged. *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Whether evidence is relevant is an issue of law. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). Therefore, when considering admission of evidence of prior misconduct, we exercise free review of the trial court's relevancy determination. *Id.* The second step in the analysis is the determination whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* When reviewing this step we use an abuse of discretion standard. *Id.*

■ Evidence of prior sexual abuse may be admissible to prove a general plan to exploit and sexually abuse an identifiable group of victims. *See State v. LaBelle*, 126 Idaho 564, 567, 887 P.2d 1071, 1074 (1995); *State v. Phillips*, 123 Idaho 178, 181, 845 P.2d 1211, 1214 (1993); *Moore*, 120 Idaho at 745–47, 819 P.2d at 1145–47; *State v. Byington*, 132 Idaho 597, 606–07, 977 P.2d 211, 220–21

(Ct.App.1998), *aff'd* 132 Idaho 589, 977 P.2d 203 (1999). Testimony of prior acts of sexual misconduct from other victims may also be relevant to corroborate the victim's testimony. *State v. Law*, 136 Idaho 721, 726, 39 P.3d 661, 666 (Ct.App.2002). Idaho cases affirming the use of bad acts evidence in sexual misconduct cases focus on prior conduct that was actual sexual abuse and that was either similar abuse or involved victims of similar ages to those abused. *State v. Field*, 144 Idaho 559, 569, 165 P.3d 273, 283 (2007).

■ In the present case, Lippert first challenges the admission of testimony that Lippert massaged the breasts of one of his step-daughters, S.U. At trial, two witnesses testified to observing similar incidents of such conduct. S.U.'s younger sister, M.H., testified that she shared a room with S.U. and woke up one night to see Lippert straddling S.U. and rubbing her breasts as she was lying on her back. Additionally, one of Lippert's daughters, T.H., testified at trial that she once observed Lippert straddling S.U. as she lay face-down on the floor and massaging the sides of her breasts. Lippert asserts that S.U. did not testify at trial to verify that Lippert had rubbed or massaged her breasts and that S.U. only recounted one instance of having her breasts massaged by Lippert when she testified at the pre-trial hearing. Lippert also asserts that the incidents are too remote in time to the charged conduct with K.Y. Even though the testimony appears to indicate that the incidents with S.U. may have occurred up to ten years prior to the charged incident with K.Y., the incidents all involved improper sexual contact that apparently began as a massage and therefore demonstrated common conduct on Lippert's part. Because the conduct was similar to the charged conduct, remoteness in time does not make the prior abuse irrelevant. *See Law*, 136 Idaho at 727, 39 P.3d at 667; *State v. McGuire*, 135 Idaho 535, 539, 20 P.3d 719, 723 (Ct.App.2001). We conclude that the district court properly ruled that this evidence demonstrated Lippert's lustful disposition towards his daughters and step-daughters and his common scheme and plan to sexually abuse them. *See State v. May-*

*lett,* 108 Idaho 671, 673, 701 P.2d 291, 293 (Ct.App.1985).

■ Lippert next challenges the admission of testimony from M.H. and K.Y. that Lippert required them to model their undergarments in front of him. K.Y. testified that her mother had asked her and B.W. to pull down their skirts and shirts to show Lippert new undergarments after returning home from shopping. M.H. testified to a separate incident wherein her mother required her and S.U. to model recently-purchased undergarments for Lippert because it was Lippert's money that bought the undergarments. M.H. stated that Lippert leered at her body when she modeled for him. Lippert asserts that testimony on modeling undergarments was not relevant because it pertained to an incident that was not similar to the charged offense. Contrary to this contention, however, the trial testimony showed that K.Y. was required to model undergarments immediately prior to the charged conduct of requiring her to submit to a massage from Lippert with her face in his lap. M.H.'s testimony corroborates K.Y.'s description of the events surrounding the charged incident and also demonstrates Lippert's lustful disposition toward the young females who resided in his residence. *See Maylett,* 108 Idaho at 673, 701 P.2d at 293. Testimony that Lippert's daughters and step-daughters were required to model undergarments for him was therefore relevant.

■ Lippert also challenges the admission of testimony from K.Y. that he repeatedly entered her bedroom to massage her breasts when she was asleep between the ages of fourteen and sixteen, during which period she slept without clothing because her home was hot. Lippert asserts that this testimony was vague because K.Y. could not recall exactly when or how many times the alleged conduct occurred. This testimony was not too vague to be relevant to the charged conduct with K.Y. Moreover, we agree with the trial court that the evidence was clearly relevant to demonstrate Lippert's common scheme or plan to sexually abuse the young females in his residence.

■ Finally, Lippert challenges the admission of testimony from K.Y. and B.W. that Lippert once came into their shared bedroom at night and masturbated under his bathrobe. Both daughters testified that they pretended to be asleep at the time of this event but were actually awake and observed Lippert masturbating while breathing heavily and making noises. The testimony indicated that K.Y. was sixteen and B.W. was fifteen at the time. Lippert asserts that this alleged incident was irrelevant because it was a one-time incident not in conformity with the charged incident with K.Y. Like the other evidence challenged by Lippert, however, this testimony was relevant to demonstrate Lippert's lustful disposition toward his daughters and step-daughters.

■ With respect to the balancing of the probative value of the admitted testimony against the risk of unfair prejudice, we find no abuse of the trial court's discretion. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). The district court clearly recognized the potential prejudicial effect of the stories of abuse separate from the charged conduct but held that the probative value was great and was not outweighed by the danger of unfair prejudice. In reaching this conclusion, the district court perceived the issue as one of discretion and excluded much of the testimony on Lippert's prior conduct offered by the state. The district court balanced the prejudicial effect of the testimony against its probative value and came to a reasoned conclusion. Despite Lippert's contention that the cumulative effect of the evidence was prejudicial, the weight of the evidence had high probative value. The incidents cumulatively demonstrated Lippert's sexual disposition toward the young females in his residence, which may not have been gleaned from evidence of any of the

incidents individually. The cumulative effect was thus highly probative of whether the charged conduct with K.Y. was committed with the intent to satisfy his lust, passions or sexual desire. *See* I.C. § 18–1506. Accordingly, we hold that the district court did not err in admitting the testimony on uncharged incidents of sexual misconduct.

## B. Request for Substitute Counsel

Lippert also asserts that the district court failed to adequately inquire into his complaints about his public defender on two different occasions prior to trial-first, at a pretrial hearing when he indicated he was dissatisfied with his appointed public defender and, second, on the first day of his trial when he stated that he was not represented by counsel. Lippert further contends that he was deprived of his constitutional right to represent himself at trial because the district court did not inform him of that right prior to trial when he expressed his dissatisfaction with the public defender.

At the conclusion of the first pre-trial hearing on November 16, 2005, defense counsel advised the district court that Lippert wished to speak on the record about the attorney-client relationship. The following colloquy occurred:

LIPPERT: I would like a different attorney. I've been sitting here for 19 weeks, and today is the first time that we've had any substantial discussion about this case, and we're running out of time. . . .

. . . .

DEFENSE COUNSEL: If the Court wishes to honor Mr. Lippert's request for another attorney, I have no objection. I don't think the attorney/client relationship is broken down. I don't see Mr. Lippert as often as he would like and probably have not seen him as often as I would like. But it's up to the Court.

LIPPERT: Your honor, in 19 weeks, we have not had any substantial discussion about these issues that we're dealing with right here today.

COURT: All right. Well did you have something further, Mr. Lippert? I don't want to cut you off.

LIPPERT: Just I have sent him, I believe, it's a total of either eight or nine, you know, please contact me; I would like to get a different attorney. In the meantime, what about this or what about that? None of that has ever been issued-answered. We're now against a time frame that, you know, I've not waived a speedy trial. [Defense counsel] and I definitely don't agree on how this is to be handled or if it's to be handled. I've made it very plain, and [defense counsel] has made it very plain by his not being there.

And there are a number of people that have gone through the jail and talked to me about the very fact that [defense counsel] comes back five to 15 minutes before a trial and that's it. That's all the counsel they're getting. The jailers see that. I see that. I'm facing up to 15 years. I don't think 15 minutes is adequate. I need another attorney.

COURT: Well, Mr. Lippert I'm going to just give a couple of responses. One is that I'm not going to give you another attorney at this point in time. And I'm hopeful that—I don't know if [defense counsel] agrees with your position on this or not. He's had a chance here to sit and listen to you make your concerns known to the Court.

He happens to be the—have the contract with the county to do the public defender representation. If I choose to change lawyers, then I have to obligate the county to pay somebody else. So, I do that with hesitation, obviously, because they've chosen [defense counsel] to do the public defender work. So, I'm hesitant to do that, and I'm not sure that I'm hearing anything.

I appreciate your concern and you'd like to talk to him more, and [defense counsel] has sat here and listened to you express that to the Court. So, perhaps he can give you more time and address your concerns. I'm hopeful that he will do that. But, again, he has the contract; and I would encourage you to get together with him, and hopefully he'll be agreeable to getting together with you and working together and communicating with him. And maybe

you'll have a better opportunity to do that than anything you've had so far.

Obviously, I know that you're not in a—you obviously have the option of retaining your own counsel, and I know that you applied for the court-appointed counsel because you're not financially situated to do that. But, obviously, if somehow you can get that put together, then you'd have the ability to retain someone of your own choosing.

At a subsequent hearing on the prior bad acts evidence on January 6, 2006, defense counsel indicated that he had contacted a potential substitute public defender, who would contact the district court to indicate that he was available to represent Lippert. The district court indicated that the potential substitute public defender had already contacted the court but did not further comment on the appropriateness of appointing substitute counsel.

On the morning of January 23, 2006—the first day scheduled for trial—Lippert refused to leave his jail cell, asserting that he was not prepared for trial because he believed the trial was scheduled for three days later and because he was not represented by counsel. The jail staff brought Lippert to court in his jail clothing, which he refused to change out of. With the members of the jury pool waiting in another room, Lippert expressed his concerns to the district court:

LIPPERT: I never asked to address the Court at this time.

COURT: All right.

LIPPERT: And I was coerced. And I have an extreme headache. I do not feel adequate to address the Court.

COURT: All right. You don't have anything you would like to say at this time Mr. Lippert?

LIPPERT: Other than I was not given notice of this trial, this date, nor have I been represented, nor am I able at this time to say more.

COURT: All right. Well, we've talked about this date for the trial on a number of occasions. I think we've talked about that in open court, Mr. Lippert. And, of course, your representation, [defense coun-

sel], is present. He's represented you at all stages of these proceedings. We've had contested pretrial motions that the Court has addressed and those sorts of things.

LIPPERT: [Defense counsel] has not represented me prior to this. There were a couple of preliminary hearings that I was not notified of, nor did I have counsel prior to those hearings, as this one.

COURT: All right. You don't remember [defense counsel] being present with you at the hearings that we've held?

LIPPERT: I was told in jail that I was supposed to come out to court, which I came out to court. [Defense counsel] walked in and sat down after I got into court. There was no conversation between he and I prior to that on either of those hearings, nor was there any conversation after that in regard to those hearings, nor has there been any conversation in regards to this trial date. The paperwork I have—which I don't have with me, I'm not adequately prepared to discuss this, other than I know that there was supposed to be a trial date of, I believe, the 26th of this month.

I have heard nothing from [defense counsel] until last evening of possibly half hour of discussion as to what I was going to wear today, et cetera. I'm not prepared, nor can I be.

COURT: Mr. Lippert, we're going to proceed with the trial. Would you like to have an opportunity to change in—I guess my preference would be that you change into street clothing. If you refuse to do that, we can continue with you as you're currently dressed. How would you like to proceed?

LIPPERT: I would like to go back and change clothes, but I'm not prepared to be a part of this trial. I have no counsel. [Defense counsel] is not my attorney. I've made that clear.

COURT: All right. Why don't we—we're going to take a break, Mr. Lippert. I'm going to ask the jailers to take you back so that you can change into your other clothing, and then have you brought back over here so that we can bring the jurors in. We have, obviously, about 50 people wait-

ing in the next room to participate in this proceeding as jurors.

So, at this time, why don't we go ahead and break. And, Mr. Lippert, you'll go back over to the jail for purposes of changing into different clothing. And then once we can get him brought back over here, we'll go ahead and begin by bringing the jurors into the courtroom.

All right, [defense counsel], did you have anything further?

DEFENSE COUNSEL: No, Your Honor.

After changing clothing, Lippert returned to the courtroom. Lippert again indicated that he wished to make a statement, and the district court engaged in the following colloquy with Lippert:

LIPPERT: I was brought in not of my own volition just now. I chose not to be carried, but I did not move on my own volition, and I protest this proceeding.

COURT: Okay, Did you have anything further, Mr. Lippert.

LIPPERT: Yeah. I'd like some time to take a look at the law and see what my— how to respond.

COURT: All right.

LIPPERT: I have no access to a law library; so if I need to respond in a legal way, I don't know how.

COURT: All right. [Defense counsel], do you have anything in light of that?

DEFENSE COUNSEL: If the Court will give Mr. Lippert the opportunity to respond, he can—he can address any questions he has regarding the law to me, or any law books to me, and I'll be happy to provide them for him.

COURT: Okay.

LIPPERT: That hasn't been done in the past; and I have written requests to [de-

fense counsel] for that, and I have copies of that that I sent him.

COURT: All right.

LIPPERT: I don't have them with me because I'm not prepared.

COURT: Okay. [Prosecutor], are you ready to proceed?

PROSECUTOR: Yes, Your Honor.

COURT: All right, why don't we have the jurors brought into the courtroom.

The district court then proceeded to trial with the public defender representing Lippert.[2]

 The Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution guarantee the right to counsel. The right to counsel does not necessarily mean a right to the attorney of one's choice. *State v. Clark*, 115 Idaho 1056, 1058, 772 P.2d 263, 265 (Ct.App. 1989). Mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *State v. McCabe*, 101 Idaho 727, 729, 620 P.2d 300, 302 (1980); *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct.App.1997). However, for "good cause" a trial court may, in its discretion, appoint a substitute attorney for an indigent defendant. I.C. § 19–856; *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980); *Peck*, 130 Idaho at 713, 946 P.2d at 1353. The trial court must afford the defendant a *full and fair opportunity* to present the facts and reasons in support of a motion for substitution of counsel after having been made aware of the problems involved. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002. An accused also has the right to waive court-appointed counsel and to conduct his or her own defense. *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562, 581 (1975); *State v. Lankford*, 116 Idaho 860, 865, 781 P.2d 197, 202 (1989);

**2.** Lippert did not further object to defense counsel's representation during the trial. Several months after the trial, Lippert stated at the sentencing hearing that he had sent defense counsel a letter discharging his services and that he had "verbally fired" counsel on the evening before the sentencing hearing. Defense counsel stated that the attorney-client relationship had "totally broken down." Lippert then stated that he did

not accept himself as his attorney and did not accept appointed counsel as his attorney. The district court required defense counsel to make himself available in an advisory capacity to Lippert during the sentencing proceedings. Lippert questioned witnesses and presented argument himself with appointed counsel present for assistance. Lippert does not challenge the district court's actions at the sentencing hearing.

*Clayton*, 100 Idaho at 897, 606 P.2d at 1001. A defendant is not required to show good cause for the desire to exercise that right. *State v. Hoppe*, 139 Idaho 871, 875, 88 P.3d 690, 694 (2003). Since such a decision amounts to a waiver of the right to counsel, the defendant should be made aware of the problems inherent in self-representation so that such waiver is knowingly and intelligently made. *Clayton*, 100 Idaho at 897, 606 P.2d at 1001. *See also* I.C. § 19–857.

Lippert contends that the district court failed to inquire into his complaints about his appointed counsel prior to trial. The Idaho Supreme Court addressed a similar contention in *Clayton*. When the trial court asked why Clayton was requesting a substitution of counsel, Clayton replied: "I'm not saying that he's not competent. I'm saying if his interest is to be competent he would be. But in my case I feel that he has not the desire to be." *Clayton*, 100 Idaho at 897–98, 606 P.2d at 1001–02. On appeal, Clayton contended that the district court should have made a more detailed inquiry into his complaint, but the Supreme Court held that the trial court should not be required to act as advocate for the defendant in a criminal proceeding. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002. Rather, the trial court's obligation was to afford defendant a full and fair opportunity to present the facts and reasons in support of his motion for substitution of counsel after having been made aware of the problems involved, which it did in that case. *Id.* The trial court *found* that good cause did not exist for substitution of counsel. The Supreme Court reviewed the record and held that the district court did not abuse its discretion in refusing to substitute counsel. *Id.*

By contrast, in *Peck*, this Court determined that the record contained no indication that the district court provided the defendant a full and fair opportunity to explain his reasons for wishing to discharge the public defender's office. At a hearing initially scheduled for sentencing where Peck asked to address the court and indicated that he was unhappy with counsel, the district court threatened to have Peck removed from the courtroom if he spoke again and informed Peck that his dissatisfaction with the public

defender's office was "irrelevant." *Peck*, 130 Idaho at 713, 946 P.2d at 1353. When Peck later indicated that he wanted to "fire counsel," the district court stated that he did not have that right. *Id.* At a subsequent sentencing hearing, the district court observed that Peck had asked to have the public defender's office discharged and that the court had refused that request. The district court stated that Peck's request appeared to be an attempt to manipulate the system rather than a bona fide request to discharge his counsel, but this Court determined that the record reflected no basis for that conclusion. We could not discern whether Peck had legitimate grounds for his request for new counsel, such as an actual conflict of interest or a deficiency in the public defender's performance. Nor could we ascertain from the record whether Peck wished to represent himself. We therefore remanded to the district court to determine whether Peck possessed good cause for his request for substitute counsel and alternatively whether Peck wished to waive his right to counsel and represent himself. *Peck*, 130 Idaho at 714, 946 P.2d at 1354. *See also State v. Nath*, 137 Idaho 712, 715, 52 P.3d 857, 860 (2002) (district court deprived Nath of a full and fair opportunity to explain his problems and court's review of Nath's motion did not encompass the totality of his claims).

In the present case, the district court responded to Lippert's complaints at the pre-trial hearing by explaining its hesitation to replace counsel who had been contracted by the county as the public defender and encouraged Lippert to "get together" with appointed counsel. The district court did not prevent Lippert from voicing his concerns, heard appointed counsel speak to the issue, and conducted an adequate inquiry into Lippert's complaints at that time. On the morning of the first day of trial, however, Lippert protested again, asserting that counsel had spent only thirty minutes with him preparing for trial and did not even inform him that the date for trial had been rescheduled. Instead of inquiring further and also questioning appointed counsel about the validity of Lippert's complaints, the district court merely asked counsel if he had anything to add and then proceeded to trial

when counsel declined to say anything. We are therefore unable to determine whether Lippert's complaints were valid. Additionally, Lippert stated: "I have no counsel. [Defense counsel] is not my attorney. I've made that clear." He also stated: "I'd like some time to take a look at the law and see what my—how to respond." The district court did not inquire further into these repeated assertions of dissatisfaction with the public defender. This case is therefore similar to *Peck*, where the district court ignored a request to "fire counsel." *Peck*, 130 Idaho at 713, 946 P.2d at 1353. Although the district court could well have been frustrated with Lippert's refusal to leave his jail cell for trial and subsequent actions, it was still obligated to make some reasonable inquiry and assessment into the validity of Lippert's concerns. *See Peck*, 130 Idaho at 714, 946 P.2d at 1354 (noting that even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights). Because the district court also failed to question counsel regarding the validity of Lippert's complaints, or make any meaningful determination, we are unable to review whether Lippert had good cause for appointment of substitute counsel.

Rather than vacating Lippert's judgment of conviction, however, we believe that the more appropriate course of action is to remand for further proceedings. We note that some courts have held that a trial court's failure to adequately inquire into a defendant's dissatisfaction and complaints about counsel automatically entitles the defendant to a new trial. *See State v. Sweeney*, 151 N.H. 666, 867 A.2d 441, 448 (2005); *State v. Bargas–Perez*, 117 Or.App. 510, 844 P.2d 931, 932 (1992). We believe the more appropriate course of action, however, is to remand for a hearing where the district court must determine whether Lippert's complaints warranted substitute counsel and, perforce, granting him a new trial.[3] *See State v. Torres*, 208

Ariz. 340, 93 P.3d 1056, 1060 (2004); *State v. Vessey*, 967 P.2d 960, 964 (Utah Ct.App. 1998). We agree with the Utah court that this approach "sufficiently protects a defendant's Sixth Amendment rights without burdening the system with new trials when the defendant's complaints lack merit." *Vessey*, 967 P.2d at 964 n. 4. *See also Mickens v. Taylor*, 535 U.S. 162, 173–74, 122 S.Ct. 1237, 1244–45, 152 L.Ed.2d 291, 305 (2002) (even though trial court violated the Sixth Amendment by failing to inquire into a possible conflict of counsel, the proper remedy in habeas corpus action was not to automatically reverse the defendant's conviction, but rather to remand for a hearing as to whether counsel's performance was affected by an actual conflict).

■ At the hearing, the district court must conduct a meaningful inquiry to determine whether Lippert possessed *good cause* for his request for substitute counsel on the morning of the first day of trial. Furthermore:

[T]he court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution. Even when the trial judge suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, perfunctory questioning is not sufficient.

*Vessey*, 967 P.2d at 962, *quoting State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct.App. 1987). Good cause includes an actual conflict of interest; a complete, irrevocable breakdown of communication; or an irreconcilable conflict which leads to an apparently unjust verdict. *See Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991) (citing cases);

---

3. In *Peck*, we remanded for a hearing to determine whether Peck possessed good cause for his request for substitute counsel at or after Peck's sentencing hearing, where the district court had failed to adequately inquire into Peck's complaints about counsel. *See Peck*, 130 Idaho at

714, 946 P.2d at 1354. Because Peck had pled guilty, we did not directly address the question of whether a defendant is automatically entitled to a new trial when the trial court fails to adequately inquire into complaints about counsel prior to trial.

*McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981). *See also United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir.2002) (decision sets forth factors to be used in examining constitutional implications of a total breakdown in communication: (1) whether the defendant's motion for new counsel was timely; (2) whether the trial court adequately inquired into defendant's reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown); *Torres*, 93 P.3d at 1060–61; *State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct.App.1988). If good cause is shown, the defendant is constitutionally entitled to the appointment of new counsel. *Vessey*, 967 P.2d at 964.

▮ A defendant may not, however, manufacture good cause by abusive or uncooperative behavior. *See United States v. John Doe # 1*, 272 F.3d 116, 123 (2d Cir. 2001). In evaluating good cause, a trial court should also consider whether the request for substitute counsel was timely. *See State v. Reber*, 138 Idaho 275, 277, 61 P.3d 632, 634 (Ct.App.2002). Finally, the decision of whether to appoint substitute counsel lies within the discretion of the trial court and will only be reviewed for an abuse of discretion.[4] *See Nath*, 137 Idaho at 714–15, 52 P.3d at 859–60. Lippert must be afforded a new trial if the district court decides that he was entitled to substitute counsel.

▮ Lippert also asserts that the district court's inadequate inquiry deprived him of his right to represent himself. The district court was not, however, obligated to inform Lippert of his right to self-representation. A defendant's demand to proceed pro se must be clear, unequivocal, and timely. *See United States v. Jones*, 938 F.2d 737, 742–43 (7th Cir.1991); *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989); *Raulerson v. Wainwright*, 732 F.2d 803, 808 (11th Cir. 1984). Therefore, the trial court is not constitutionally required to inform a defendant

of the right to self-representation when a defendant merely expresses dissatisfaction with current counsel. *See United States v. Martin*, 25 F.3d 293, 296 (6th Cir.1994). Lippert did not clearly and unequivocally demand to represent himself on the morning of the first day of his trial. Indeed, Lippert appears to have expressed that he was not prepared to represent himself because he asked for additional time to "look at the law." Therefore, Lippert's assertion that the district court deprived him of the right to represent himself fails.

## III.

### CONCLUSION

The district court did not err in ruling that the evidence of other instances of sexual abuse of Lippert's daughters and step-daughters were relevant. Nor did the district court abuse its discretion in ruling that the probative value of evidence on those incidents was not substantially outweighed by any prejudicial effect. Accordingly, the trial court's evidentiary rulings are affirmed. We hold, however, that the district court did not conduct an adequate inquiry into Lippert's complaints about his court-appointed counsel on the morning of the first day of his trial. We therefore remand for further proceedings consistent with the views expressed herein, to give Lippert a full and fair opportunity to present facts and reasons in support of his motion for substitute counsel. If Lippert's complaints about his appointed counsel amounted to good cause justifying the appointment of substitute counsel, the district court must also grant Lippert a new trial. However, if the court determines Lippert's request for substitution of counsel was unfounded, the judgment of conviction will be affirmed.

Judge GUTIERREZ, concurs.

Judge LANSING, dissenting.

I respectfully dissent from Part II(B) of the majority opinion. In my view, the dis-

---

4. We note that Lippert will not be precluded from bringing an ineffective assistance of counsel claim in a post-conviction proceeding because ineffective assistance is a separate issue from whether he was entitled to substitute counsel prior to trial.

trict court here gave Lippert a "full and fair opportunity" to express his reasons for dissatisfaction with his appointed counsel. Specifically, on the date scheduled for trial, the court asked, "You don't have anything you would like to say at this time Mr. Lippert?" Lippert responded, "Other than I was not given notice of this trial, this date, nor have I been represented, nor am I able at this time to say more." Thereafter, Lippert reiterated his complaint that he had not been notified of the change of trial date and also said that his only discussion with defense counsel about preparation for trial was a conversation the prior evening of about a half-hour's duration. While those allegations, if true, do not bespeak stellar performance by the appointed attorney, neither do they demonstrate such deficiency of counsel or breakdown of communications as to warrant appointment of substitute counsel. The district court also knew that appointed counsel had devoted considerable attention to the case prior to trial. He conducted discovery, filed motions in limine to exclude evidence of other misconduct by Lippert, and vigorously participated in hearings on the motions.

The district court did not cut Lippert off, as occurred in *State v. Peck*, 130 Idaho 711, 946 P.2d 1351 (Ct.App.1997), but rather, allowed him an opportunity to fully explain his discontent with the attorney. It may have been preferable for the district court to probe further or to require the defense attorney to respond to Lippert's assertions, but in my view the court satisfied its responsibility as defined by the Idaho Supreme Court in *State v. Clayton*, 100 Idaho 896, 898, 606 P.2d 1000, 1002 (1980). There the Supreme Court rejected a defendant's argument that the trial court should have conducted a more detailed inquiry into the question of counsel's competence or the source of any attorney-client conflict. The Court said: "The trial judge should not be required to act as an advocate for the defendant in a criminal proceeding. His only obligation was to afford defendant a full and fair opportunity to present the facts and reasons in support of his motion for substitution of counsel after having been made aware by the court of the problems involved." As in *Clayton*, Lippert was afforded an ample opportunity to detail his complaints about the attorney. In light of the standard enunciated by the Supreme Court in *Clayton*, I cannot say that the district court here failed in its obligation to make an adequate inquiry. Therefore, I would affirm the judgment of conviction.