882 P.2d 444

STATE of Idaho, Plaintiff–Respondent,

v.

Michael R. VILLARREAL,
Defendant–Appellant.

No. 20535.

Court of Appeals of Idaho.

Aug. 23, 1994.

Petition for Review Denied Oct. 20, 1994.

Manweiler, Bevis & Cameron, P.A., Boise, for appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Michael Villarreal appeals from the judgment of conviction entered upon his plea of guilty to rape. I.C. § 18–6101. He raises issues concerning the district court's decision to relinquish jurisdiction rather than placing Villarreal on probation, and the exercise of the court's discretion in refusing to reduce the sentence imposed. We affirm.

## BACKGROUND

Villarreal was indicted upon charges of kidnapping and rape. The events giving rise to these charges may be summarized as follows. In late December, 1991, while on leave as an enlistee in the United States Marine Corps, Villarreal and a male friend each had sexual intercourse with a woman they had met in a bar in Canyon County. The victim reported the incident as a rape, stating that she had been grabbed by the two men as she left the bar near closing time, was forced into their vehicle, and was taken to a rural area in Ada County where she was beaten and subjected to intercourse with each of the men against her will. She was then ejected from the vehicle with no clothing below her waist and left by the side of the road. The temperature reportedly was sixteen degrees. She made her way to a farmhouse where she called the police and was taken to a hospital. Villarreal returned to his military duty station in California but soon learned that he had been identified as one of the suspects in the rape investigation. He contacted local law enforcement agencies and turned himself in. Villarreal was twenty-three years old at the time and had no prior felony record. He was released from the Marine Corps with an Other Than Honorable Discharge.

Villarreal eventually pled guilty to the count charging rape, pursuant to a plea agreement under I.C.R. 11(d)(1). The agreement was reduced to writing and submitted to the district court. It provided that, if the court accepted Villarreal's plea of guilty, the state would dismiss the kidnapping charge; the defendant would be sentenced to ten years with a three-year minimum period of confinement; the court would retain jurisdiction until such time as a report was prepared by the jurisdictional review committee of the Department of Corrections for review by the court and counsel and a hearing held thereon; the defendant would pay mandatory court costs and fees; and the defendant would pay restitution to the victim in a set amount.

The plea agreement was accepted by the district court, and Villarreal pled guilty to the rape charge. Villarreal was sentenced and a judgment of conviction was entered

consistent with the terms of the plea agreement, including the retention of jurisdiction by the district court. When the court received a report from the jurisdictional review committee, a hearing was held. The committee reported its conclusion that Villarreal continued to be a threat to society, and recommended that the court relinquish jurisdiction.

After taking the matter under advisement, the court issued a memorandum decision and order relinquishing jurisdiction. The court noted that its primary concern in sentencing was the protection of society, and therefore accepted the recommendation of the committee to release jurisdiction. However, the district court determined that it would be appropriate to reduce the fixed portion of Villarreal's sentence so that the correctional authorities would be able to review his suitability for parole at an earlier time. The court also noted that the judgment of conviction had not recited the credit for prejudgment incarceration to which Villarreal was entitled, a period of 206 days according to the presentence report. As a result, the court entered an amended judgment of conviction specifying eighteen months, rather than three years, as the minimum term of incarceration in the ten-year unified sentence, and giving 206 days credit against the sentence for the period of prejudgment incarceration.

Upon entry of the amended judgment, Villarreal timely filed a notice of appeal. Later, he also timely filed a motion under I.C.R. 35. This motion sought a further reduction of his sentence and a correction of the prejudgment credit to include the time that had transpired during the period the court retained jurisdiction and while the court considered the matter under advisement before entering its memorandum decision and order relinquishing jurisdiction. The court denied the motion for reduction of sentence, by written order, but noted that the prejudgment credit was in need of further corrective clarification. Accordingly, the order directed the court's clerk to furnish a copy of the order to the records department of the Board of Correction, informing that office that its records should reflect that the eighteen-month fixed portion of Villarreal's sentence should be computed to commence about January, 17, 1992, when Villarreal was arrested and incarcerated on the indictment for rape.

## ISSUES

Villarreal raises the following issues. First, he contends that the district court erred in relinquishing jurisdiction based upon the jurisdictional review committee's report because the committee's recommendation was not justified, was a violation of the defendant's right to due process and was contrary to the defendant's performance at the correctional institution. Next, Villarreal argues that the district court abused its discretion in relinquishing jurisdiction because Villarreal was an appropriate candidate for probation. Finally, he asserts that the district court abused its discretion by denying Villarreal's motion to reduce his sentence. As a related point, Villarreal also questions whether another amended judgment should have been entered reflecting the correct amount of credit for the time served, instead of merely directing the clerk of the court to send a copy of the memorandum order to the Department of Corrections informing that agency of the computation for credit.

## ANALYSIS

### I.

We turn first to Villarreal's challenge to the report rendered by the jurisdictional review committee. Villarreal claims that the committee was unduly influenced to recommend relinquishment of jurisdiction simply because of the nature of Villarreal's crime, forcible rape. He points to a statement in the committee's report: "because the crime itself was a very violent act and we do not have sufficient assurance that additional acts of violence will not occur." Accordingly, he asserts that the committee refused to consider probation based on the category of his crime rather than on his institutional performance, which, he maintains, denied him due process. He argues that the reports of his progress and performance overall at the correctional institution warranted a recommendation of probation.

We are not persuaded by Villarreal's arguments. At the outset, we must recognize that the committee's report resulted from an unusual set of circumstances. The court's order retaining jurisdiction had an expiration date of February 5, 1993. However, on November 22, 1992, Villarreal committed an institutional offense when he and two other inmates physically assaulted a fourth inmate. As a result of this incident, a disciplinary offense report was prepared and a special jurisdictional review committee was formed to consider an early recommendation to the district court in Villarreal's case. On December 4, Villarreal was given notice that the special review committee would convene for a hearing on December 7. He was notified that this hearing was to review his suitability to remain in the retained jurisdiction program and his potential to complete probation successfully because of the recent disciplinary incident involving menacing behavior. He was provided a copy of the reasons for this action, and also copies of the dormitory logs with officers' comments on the assault incident. The committee then held the hearing as scheduled. Villarreal submitted statements from several witnesses and also presented his own statement. A psychological evaluation of Villarreal, which had been prepared November 30 was also considered by the committee.

Based upon the information presented, the committee concluded that the disciplinary offense report "which was initially seen as very serious (attempted sexual assault) was more likely an incident much closer to what Mr. Villarreal described—horseplay that got out of hand." The committee noted, however, that "horseplay is against the rules for this very reason." The committee then reached the gist of the inquiry, in its report to the court:

The question the Committee must address is whether Mr. Villarreal will be involved in future acts of violence, and we don't have a good answer to that question. Mr. Villarreal's insight so far occurs after the event, but he appears to be making progress in this area. This does not necessarily mean that insight will prevent future acts of violence. Mr. Villarreal does not seem to have much insight as to the root of his anger which he says comes out when drinking. He seems to understand that drinking is a problem and knows he must stop drinking. The Committee believes he has good intentions, but good intentions are not enough. The Committee cannot recommend probation in this case because the crime itself was a very violent act and we do not have sufficient assurance that additional acts of violence will not occur. The psychological report sees his actions as random, making any statement regarding amenability to treatment and prediction about chances of reoffense meaningless.[1]

This report concluded with a recommendation that the district court relinquish jurisdiction.

Upon review of this record, we do not find any due process violations as suggested by Villarreal. Villarreal's contentions, in essence, may be more appropriately characterized as a disagreement with the conclusions reached by the committee from the information presented at the special jurisdictional review hearing. All of the information both favorable and unfavorable, as documented by the committee's report, was submitted to the district court at the hearing on whether to continue or relinquish jurisdiction. The court had the benefit not only of this report but of the arguments and views of counsel with respect to the ultimate question.

 The decision to place a defendant on probation or whether, instead, to release

---

1. The committee's observation refers to the conclusion reached by the psychologist. The psychologist opined:

In summary, Mr. Villarreal appears to have acted out of impulse and greed with no thought for his [rape] victim. He physically assaulted her, raped her, and abandoned her in the frigid cold partially clothed. There do not appear to be any precipitating stressors which may have preceded the offense which make it difficult to identify a pattern. Mr. Villarreal has several personality traits which suggest that he is likely to act out on his impulses with no thought for others. It is likely that he will not internalize treatment concepts and, therefore, remains a high risk to reoffend.

jurisdiction over the defendant is a matter within the sound discretion of the trial court. *State v. Atwood*, 122 Idaho 199, 201, 832 P.2d 1134, 1136 (Ct.App.1992). Absent an abuse of discretion, the court's decision will be sustained. *State v. Lee*, 117 Idaho 203, 786 P.2d 594 (Ct.App.1990). Here, the district court concluded that placing Villarreal on probation was not appropriate and that jurisdiction should be released. The record does not support Villarreal's contention that the court abused its discretion in reaching that decision. The order relinquishing jurisdiction will be sustained.

## II.

■ We turn next to the issues relating to denial of Villarreal's Rule 35 motion to reduce his sentence. The request for reduction of a sentence essentially is a plea for leniency which may be granted if the sentence originally imposed was unduly severe. *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). The decision whether to grant such a request is a matter within the sentencing court's discretion, which decision will not be disturbed unless there was an abuse of discretion. *State v. Hernandez*, 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989).

■ The criteria for examining rulings denying requests for leniency are the same as those applied in determining whether the original sentence was reasonable. *Lopez*, 106 Idaho at 450, 680 P.2d at 872. In other words, we examine the probable duration of confinement in light of the nature of the crime, the character of the offender,[2] and the objectives of sentencing, which are the protection of society, deterrence, rehabilitation, and retribution. *Id.* If the sentence was not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with his motion for reduction. *Hernandez, supra.* If he fails to make this showing, we cannot say that the denial of the motion represents an abuse of discretion. *Id.* 121 Idaho at 117, 822 P.2d at 1014.

■ The court is under no obligation to amend or modify a sentence that has been legally imposed. *State v. Vega*, 113 Idaho 756, 747 P.2d 778 (Ct.App.1987). Rule 35 permits the court to consider and determine such motions without admitting additional testimony and without hearing oral argument.

■ We have considered the record in light of the foregoing principles. In a detailed memorandum decision, the district court addressed the contentions made by Villarreal in support of his application to further reduce his sentence beyond modification of the minimum term of confinement earlier reduced from three years to eighteen months. The court concluded that the sentence agreed to and imposed pursuant to I.C.R. 11 was appropriate considering the seriousness of the crime and the circumstances surrounding its commission, and was not unduly harsh or severe. Although Villarreal argued that his potential for rehabilitation weighed in favor of the leniency requested, it is clear that the court considered the protection of society afforded by leaving Villarreal in the custody of the Board of Correction for a term of up to ten years was more appropriate. We cannot say that the court abused its discretion in reaching that decision. The order refusing to further reduce Villarreal's sentence will be upheld.

---

2. Villarreal's military record reveals disciplinary offenses for being drunk on duty, driving while on base revocation and signing a fraudulent VHA document. Villarreal also was accused of being involved in a theft of a car stereo belonging to another Marine. His criminal history reveals dispositions as a juvenile for disturbing the peace, carrying a concealed weapon, possession of marijuana, illegal possession of beer and tobacco; adult convictions for petty theft, battery, and possession of stolen property; and seven traffic infractions.

## 282

### III.

■ Finally, we address Villarreal's claim that the court should have entered a second amended judgment of conviction reflecting the proper credit for time served, rather than simply transmitting an order to that effect to the records department of the Board of Correction. Pursuant to I.C. § 18–309, a defendant is entitled to credit for any period of incarceration occurring prior to entry of judgment, and for any period subsequent to the judgment occurring while the defendant still is under the jurisdiction of the court. *State v. Chilton*, 116 Idaho 274, 775 P.2d 166 (Ct.App.1989). The statute does not specify how the recitation of this credit is to be documented, i.e., by amending the judgment of conviction or by separate order. In *Chilton*, we held that the district court erroneously had summarily denied the defendant's claim that he was entitled to credit for a period of incarceration. We remanded the case, directing that: "If the district court determines Chilton is entitled to further credit on his sentence, an order should be entered accordingly by the district court, and a copy remitted to the Board of Correction." 116 Idaho at 276, 775 P.2d at 168.

■ Here, Villarreal does not assert that the district court failed to determine and articulate the proper period of credit to which Villarreal was entitled. Consistent with *Chilton*, we hold that the district court did not err by implementing that credit by way of an order, rather than an amended judgment, directed to the Board of Correction.

### CONCLUSION

We conclude that the district court did not commit error or abuse its discretion in reaching any of the decisions challenged in this appeal. Accordingly, the judgment of conviction, the order relinquishing jurisdiction, and the order denying Villarreal's motion for reduction of his sentence, are affirmed.

LANSING and PERRY, JJ., concur.