**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 38556**

STATE OF IDAHO,       )
             )  **2012 Opinion No. 49**
    Plaintiff-Respondent,  )
             )  **Filed: September 24, 2012**
v.             )
             )  **Stephen W. Kenyon, Clerk**
MARLIN WAYNE DEWITT,   )
             )
    Defendant-Appellant.   )
             )

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Jeff M. Brudie, District Judge.

Judgment of conviction and unified sentence of ten years, with a minimum period of confinement of three years, for trafficking in methamphetamine and judgment of conviction for misdemeanor possession of drug paraphernalia, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

MELANSON, Judge

  Marlin Wayne DeWitt appeals from his judgment of conviction and unified sentence of ten years, with a minimum period of confinement of three years, for trafficking in methamphetamine and his judgment of conviction for misdemeanor possession of drug paraphernalia. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

  DeWitt was found guilty by a jury of trafficking in methamphetamine, I.C. § 37-2732B(a)(4)(A), and possession of drug paraphernalia, I.C. § 37-2734A(1). The district court sentenced DeWitt to a unified term of ten years, with a minimum period of confinement of three years, for trafficking in methamphetamine and assessed court costs only for possession of drug paraphernalia. DeWitt appeals.

## II.

## ANALYSIS

**A.    Denial of Opportunity to Obtain New Counsel**

DeWitt argues that his Sixth Amendment right to counsel was violated when the district court denied his request to obtain alternate counsel without providing DeWitt a full and fair opportunity to explain the conflict he had with counsel.  On the morning of trial, DeWitt appeared with his retained counsel and, prior to jury selection, the following colloquy occurred:

> [COURT]        [Counsel], it's my understanding Mr. DeWitt wants to make some request to the Court at this time?
>
> [COUNSEL]   Your Honor, my client arrived this morning and explained to me that he wished to obtain different counsel for the trial in this matter and that he's not satisfied in the way that I'm representing him.  And so I thought that it would be appropriate that I bring that matter to the Court's attention, and so I did so in the presence of the prosecutor and your Honor.
>
> And I do not know exactly the specifics of the request, but I thought that my client should have the opportunity to bring that to the Court's attention.
>
> [COURT]        Mr. DeWitt.
>
> [DEWITT]     I just don't feel I'm--he's working in my best interest.  I have requested a couple of things and neither one of them got looked up or checked on.  I just don't feel he's doing me . . .
>
> [COURT]        Well, you retained [Counsel] to represent you in this case, correct, Mr. DeWitt?
>
> [DEWITT]     Pardon?
>
> [COURT]        You retained [Counsel] to represent you in this case, didn't you?
>
> [DEWITT]     Yes, I did.
>
> [COURT]        [Counsel], are you ready--are you ready and prepared to proceed with this trial today?
>
> [COUNSEL]   Your Honor, I am ready and prepared to proceed.  I guess personally I would rather not proceed with my client having that kind of attitude toward the proceedings.  It does give me concern about my ability to have him cooperate with me in the conduct of the trial and how we should approach the issues that involve cross examination and argument to the jury.  I do believe we are going to have some problems agreeing on how that should be handled.
>
> I guess on his behalf, I really--I feel obligated to ask this Court to continue the trial at this point and give him the opportunity to obtain alternate counsel that he feels comfortable with.  The trial will obviously be a most important stage of this process although we have gone through pretrial motion hearings and so forth, preliminary hearings, I guess I don't feel real comfortable proceeding at this point under these circumstances.
>
> [COURT]        [Prosecutor], anything from the State?
>
> [PROSECUTOR]     Yes, your Honor.  Your Honor, we have three witnesses subpoenaed.  One is . . . from the State Lab in Coeur d'Alene and he's

on his way right now and should be arriving shortly. We have a detective and a deputy. All the jurors have been summoned and are here ready to go. State's concern that, you know, at this late of an hour that this is brought up at this time, it seems like this should have been brought up sufficiently in advance of trial so that all the witnesses and jurors weren't--you know, weren't here and ready to go. It just is a hardship on Idaho County to have to pay for more jurors to come back again for another trial and costs from the prosecutor to re-subpoena all these witnesses.

And I just think--I just think the motion is too late. We got a jury ready to go and this is--[Counsel] is a very competent criminal defense attorney and I'm sure he will do a very competent job today in the courtroom. And it doesn't seem like it's necessary at this point to appoint new counsel. And I just think--I just think there's prejudice to the State and the motion is too late, your Honor.

[COURT]      Well, I'm also concerned with the timing of this being raised at this point in time. I have got a jury panel--and this matter that's been pending for quite sometime, I have got a jury panel that I have summoned in here to specifically to hear this trial, and for me to be hearing about this now is simply inappropriate. And I still have to be able to address it at this point in time and at this point in time I have not heard any specific grounds that would allow me to feel comfortable allowing [Counsel] to withdraw. I have heard no grounds given from Mr. DeWitt other than general dissatisfaction that [Counsel] is working in his best interest.

I'm familiar with [Counsel], he's tried cases before me and done so in a very competent fashion before. We have proceeded through some pretrial motions raising some pretty legitimate grounds on this case previously, I have made my rulings on those pretrial motions, so I see nothing to support Mr. DeWitt's allegation that [Counsel] is not working in his best interest. And with the lack of any specific grounds for that, I'm going to deny the request. And since this matter's been set to proceed to a jury trial today, that's what we are going to do.

Anything else for the record at this time, [Counsel]?

[COUNSEL]   No, your Honor.

[COURT]      [Prosecutor]?

[PROSECUTOR]      No, your Honor.

[COURT]      Alright. Let's go ahead and go back into the district courtroom so we can start the jury selection process this morning.

Based upon this colloquy, DeWitt asserts that, as in *State v. Lippert*, 145 Idaho 586, 181 P.3d 512 (Ct. App. 2007), he was denied a full and fair opportunity to explain the nature of his conflict with counsel and, therefore, his case must be remanded to the district court to allow such an opportunity.

In *Lippert*, this Court addressed the issue of whether the district court failed to adequately inquire into Lippert's complaints about his public defender on the morning of the first day of

trial. On that morning, Lippert asserted that his public defender had spent only thirty minutes with him preparing for trial and did not inform Lippert that the trial had been rescheduled. Lippert also asserted, "I have no counsel. [Defense counsel] is not my attorney. I've made that clear." *Id.* at 596, 181 P.3d at 522. Lippert stated, "I'd like some time to take a look at the law and see what my--how to respond." *Id.* Instead of inquiring further into Lippert's assertions of dissatisfaction with the public defender and questioning appointed counsel about the validity of Lippert's complaints, the district court asked counsel if he had anything to add and then proceeded to trial when counsel declined to respond.

> This Court explained:
>
> > The Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution guarantee the right to counsel. The right to counsel does not necessarily mean a right to the attorney of one's choice. *State v. Clark*, 115 Idaho 1056, 1058, 772 P.2d 263, 265 (Ct. App. 1989). Mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *State v. McCabe*, 101 Idaho 727, 729, 620 P.2d 300, 302 (1980); *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct. App. 1997). However, for "good cause" a trial court may, in its discretion, appoint a substitute attorney for an indigent defendant. I.C. § 19-856; *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980); *Peck*, 130 Idaho at 713, 946 P.2d at 1353. The trial court must afford the defendant a *full and fair opportunity* to present the facts and reasons in support of a motion for substitution of counsel after having been made aware of the problems involved. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002.

*Lippert*, 145 Idaho at 594, 181 P.3d at 520. This Court concluded that the district court failed to make a reasonable inquiry into the validity of Lippert's complaints, failed to question counsel regarding the validity of such complaints, and failed to make any meaningful determination. *Id.* at 596, 181 P.3d at 522. Thus, because we were unable to review whether Lippert had good cause for appointment of substitute counsel, we remanded Lippert's case to the district court for further proceedings. *Id.*

The state asserts that, while DeWitt characterizes his request made on the morning of trial as one for substitute counsel as in *Lippert*, DeWitt's request was really a motion for a continuance in order to obtain alternate counsel. The state asserts that *Lippert* is inapplicable to this case because DeWitt was not appointed counsel, but retained private counsel and, therefore, was not required to show good cause for appointment of substitute counsel. Thus, the state

4

contends that any claimed error by the district court in failing to provide DeWitt the opportunity to show good cause is without merit.

As described above, during the colloquy on the morning of trial, DeWitt's counsel informed the district court that, while counsel was not exactly sure of the specifics of DeWitt's request, DeWitt had notified counsel that he was not satisfied with counsel's representation and wished to obtain alternate counsel. DeWitt expressed his dissatisfaction with counsel's representation to the district court when given the opportunity to speak. Upon questioning by the district court, DeWitt's counsel specifically requested a continuance to provide DeWitt the opportunity to obtain alternate counsel. Because DeWitt made his motion on morning of trial, the practical effect of such motion, if granted, whether titled a motion for substitute counsel or a motion for a continuance, would have been a continuance of trial so DeWitt could obtain alternate counsel. Thus, we agree with the state's characterization of DeWitt's request as a motion for a continuance to obtain alternate counsel. However, such characterization does not necessarily operate to make *Lippert* inapplicable to this case such that the district court, once informed that a claim of inadequate representation existed, did not have to provide DeWitt a full and fair opportunity to explain such deficiency and show good cause for substitution of counsel in order to justify a continuance. Indeed, it has been held that, if a defendant seeks to obtain new private counsel just before trial, the district court must decide if the reasons for the defendant's request, effectively a request for substitute counsel, constitute good cause and are sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. *See United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982).

DeWitt adds that, pursuant to *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980), there is no basis for drawing a distinction between appointed counsel and retained counsel in this circumstance because, regardless of who pays the attorney's fees, a defendant who believes that his or her counsel is not providing competent representation must be given a full and fair opportunity to explain and show good cause for a request to obtain alternate counsel. In *Cuyler*, the United States Supreme Court addressed a situation where the respondent was one of three defendants accused of murder that were tried separately and represented by the same counsel. Neither counsel nor anyone else objected to the multiple representation and counsel's opening argument at Sullivan's trial suggested that the interests of the defendants were aligned. The Court explained:

5

A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection.

*Cuyler*, 446 U.S. at 344. The Court also explained that a trial court has a duty to inquire into the propriety of multiple representation only when the trial court knows or reasonably should know that a particular conflict of interest exists. *Id.* at 347.

Even assuming that *Cuyler, Welty*, and *Lippert* require that, where a defendant informs the district court that he or she is dissatisfied with retained counsel's representation on the morning of trial, the district court must inquire and provide a full and fair opportunity for the defendant to show good cause to support a request for alternate counsel in order to justify a continuance, the record does not disclose that DeWitt was deprived of such an opportunity in this case. DeWitt argues that, while he was attempting to explain the conflict he was having with counsel, the district court interrupted him by asking whether he had retained his counsel. DeWitt also admits that the record does not disclose whether the district court interrupted DeWitt or whether DeWitt trailed off mid-sentence. If the latter occurred, it was reasonable for the district court to begin asking DeWitt questions regarding whether he had retained his attorney and to question DeWitt's counsel about his preparedness for trial. The district court should not be required to act as advocate for the defendant in a criminal proceeding. *State v. Clayton*, 100 Idaho 896, 898, 606 P.2d 1000, 1002 (1980). Additionally, it is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991). Thus, we will not presume the district court failed to provide DeWitt a full and fair opportunity to explain his alleged conflict with counsel. However, if there is evidence DeWitt's counsel actually provided ineffective assistance, this may be an appropriate case for post-conviction relief where DeWitt could present such evidence.

6

In *State v. Cagle*, 126 Idaho 794, 891 P.2d 1054 (Ct. App. 1995), this Court considered whether the district court abused its discretion by denying Cagle's motion for a continuance to obtain alternate counsel after Cagle expressed dissatisfaction with his retained counsel. In that case, there was no question regarding whether the district court had provided Cagle a full and fair opportunity to explain his dissatisfaction with counsel. We explained:

> The decision to grant or deny a continuance is vested in the sound discretion of the trial court. *State v. Ward*, 98 Idaho 571, 574, 569 P.2d 916, 919 (1977). Generally, it has been held that unless an appellant shows that his substantial rights have been prejudiced by reason of a denial of his motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Laws*, 94 Idaho 200, 202, 485 P.2d 144, 146 (1971). "'Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.'" *State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct. App. 1988), *quoting Morris v. Slappy*, 461 U.S. 1, 11, 103 S. Ct. 1610, 1616, 75 L. Ed. 2d 610 (1983).
>
> Where a defendant seeks new counsel, several factors are relevant: the timing of the motion; the requested length of delay, including whether the delay is an attempt to manipulate the proceedings; the number, if any, of similar continuances sought by the defendant; inconvenience to witnesses; any prejudice to the prosecution; whether an irreconcilable conflict exists between the accused and counsel; and the qualifications possessed by present counsel. *Carman*, 114 Idaho at 793, 760 P.2d at 1209.

*Cagle*, 126 Idaho at 797, 891 P.2d at 1057.

In applying the relevant factors, this Court reasoned that, because Cagle's motion was made on the first day of trial, the timing supported the district court's denial of the motion. Further, while Cagle did not request any specific length of delay, we noted that it would require time for another attorney to become fully familiar with the case and considered the state's argument that the district court's calendar was crowded. Also, while the record did not suggest that Cagle sought prior continuances, we determined that factor was clearly outweighed by inconvenience to the witnesses assembled and prepared to testify the day of trial. Further, the record did not indicate an irreconcilable conflict between Cagle and his attorney, and neither Cagle nor his attorney disclosed any specifics of any alleged irreconcilable conflicts or represented that communication had broken down. We explained that Cagle's attorney performed well at trial and that Cagle's only complaint with his attorney was that he did not

contact or present certain witnesses, although Cagle did not provide any information as to who the witnesses would have been or what they would have divulged. We finally noted that, although the district court allowed Cagle an opportunity to express the grounds for his dissatisfaction with counsel, the district court did not find his reasons compelling. Thus, we determined that Cagle's substantial rights were not prejudiced by the district court's decision and affirmed the district court's order denying Cagle's motion for a continuance. *Id.* at 798, 891 P.2d at 1058.

Here, as explained above, we will not presume the district court failed to provide DeWitt a full and fair opportunity to explain his alleged conflict with counsel. Thus, application of the relevant factors described in *Cagle* is appropriate. Because DeWitt's motion for a continuance to obtain alternate counsel was made on the morning of trial prior to jury selection, the timing supported the district court's denial of the motion. While DeWitt did not request any specific length of delay, it would require time for another attorney to become fully familiar with his case and to reschedule the trial. As described above, the state argued that, because three witnesses were subpoenaed and all jurors had been summoned and were ready to proceed with trial, it would be inconvenient to empanel another jury and conduct another trial and resubpoena the witnesses. As was in the case in *Cagle*, while the record does not suggest that DeWitt sought a number of prior continuances, that factor is outweighed by inconvenience to the witnesses assembled and prepared to testify the day of trial. The record does not indicate that there was any irreconcilable conflict between DeWitt and his counsel and neither DeWitt nor his counsel disclosed any specifics of any alleged irreconcilable conflicts or represented that communication had broken down. Further, the district court noted during the colloquy that it was familiar with DeWitt's counsel because he had tried cases before the district court previously and done so in a competent fashion. The district court also noted that DeWitt's counsel had filed pretrial motions in this case that raised legitimate grounds. Although the district court provided DeWitt an opportunity to express the grounds for his dissatisfaction with counsel during the colloquy, we agree with the district court that DeWitt's reasons were not compelling. Thus, we cannot say that DeWitt's substantial rights were prejudiced by the district court's decision or that the district court abused its discretion by denying DeWitt's motion for a continuance to obtain alternate counsel.

8

**B.     Sentence Review**

DeWitt also argues that the district court abused its discretion by imposing an excessive sentence because this was his first felony conviction, he has taken steps to deal with his drug addiction, and he has the support of his family and friends.  An appellate review of a sentence is based on an abuse of discretion standard.  *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000).  Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion.  *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).  A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case.  *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982).  A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case."  *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).  Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest.  *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1884 (Ct. App. 1982).  When reviewing the length of a sentence, we consider the defendant's entire sentence.  *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In sentencing DeWitt, the district court noted that it had reviewed the presentence investigation report (PSI).  The PSI included several letters of support from DeWitt's family.  The district court also considered  DeWitt's statement in the PSI that he did not commit a crime and determined that DeWitt lacked an appreciation for the serious nature of the trafficking in methamphetamine offense.  While DeWitt argues that he should have been granted more lenient treatment because this was his first felony offense, we note that the maximum number of years of imprisonment upon a conviction for trafficking in methamphetamine is life imprisonment.  I.C. § 37-2732B(a)(4)(D).  Further, the mandatory minimum fixed term is three years.  I.C. § 37-2732B(a)(4)(A).  The issue before this Court is not whether the sentence is one that we would have imposed, but whether the sentence is plainly excessive under any reasonable view of the facts.  *Toohill*, 103 Idaho at 568, 650 P.2d at 710.  If reasonable minds might differ as to whether the sentence is excessive, we are not free to substitute our view for that of the district court.  *Id.*  Having thoroughly reviewed the record in this case, we cannot say that the district court abused

its discretion by sentencing DeWitt to a unified term of ten years, with a minimum period of confinement of three years, for trafficking in methamphetamine.

### III.

### CONCLUSION

The district court did not err by denying DeWitt's request for an opportunity to obtain alternate counsel. Additionally, DeWitt has not shown that the district court abused its discretion by imposing an excessive sentence. Therefore, DeWitt's judgment of conviction and unified sentence of ten years, with a minimum period of confinement of three years, for trafficking in methamphetamine and his judgment of conviction for misdemeanor possession of drug paraphernalia are affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**