**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38681**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 313 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 8, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOEY EDWARD HALL, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan E. Wiebe, District Judge.

Order revoking probation and executing unified sentence of five years, with two years determinate, for possession of a controlled substance, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Joey Edward Hall appeals from the district court's order revoking probation and executing his suspended unified sentence of five years, with two years determinate, for possession of a controlled substance (methamphetamine). Specifically, Hall asserts the district court erred when it failed to conduct a sufficient inquiry regarding Hall's request for substitute counsel during the probation revocation proceedings and failed to appoint substitute counsel. Additionally, Hall appeals from the district court's order denying Hall's Idaho Criminal Rule 35 motion for a reduction in sentence, asserting the district court abused its discretion. For the reasons set forth below, we affirm both orders.

# I.

## FACTS AND PROCEDURE

The State charged Hall with felony possession of a controlled substance (methamphetamine). Pursuant to a plea agreement, Hall pled guilty, and the district court withheld judgment and transferred the case to drug court. Among the terms of the withheld judgment, Hall was to serve three years of probation.

After various violations of the rules of drug court and Hall having served some discretionary jail time on at least three different occasions, the State filed a motion seeking the revocation of Hall's probation due to several additional violations: changing residence without the prior approval of the probation officer; failing to appear in drug court when scheduled; admitting to having consumed alcohol and controlled substances; failing to follow requests of the probation officer; and being terminated from drug court. Hall admitted to being terminated from drug court, and the State withdrew the remaining allegations.

Prior to the disposition hearing on the probation violation, Hall moved to set aside his admission to being terminated from drug court because that particular allegation was premature. Although Hall had allegedly been removed from the drug court program prior to the State's filing of the motion, the actual order expelling Hall from drug court was not filed until after the State made its motion. The district court permitted Hall to withdraw his admission and held an evidentiary hearing on all of the State's allegations of probation violations initially brought forward. The State presented testimony from the supervising officer in the drug court program, and Hall testified on his own behalf. The district court found proof of three violations: the failure to report as required to the probation officer; consumption of drugs; and the failure to follow all lawful requests of the probation officer.

Before the disposition hearing, the State filed another motion for revocation of Hall's probation based on allegations that Hall failed to submit to drug testing on two occasions and that Hall was terminated from the drug court program (a renewed allegation based on the order terminating Hall from drug court later filed). The district court indicated it would dismiss the new allegations if it decided to revoke Hall's probation at the disposition hearing on the first set of probation violations. The district court then revoked the withheld judgment and probation, imposed a unified sentence of five years, with two years determinate, and retained jurisdiction.

The district court, before the expiration of the retained jurisdiction period, placed Hall on probation for three years.

Just one month later, the State filed another motion to revoke Hall's probation due to more violations. The State alleged Hall violated the terms of his probation by resisting and obstructing an officer, consuming methamphetamine and alcohol, and failing to submit to drug testing. At the evidentiary hearing on these allegations, Hall expressed his desire to have new counsel based on counsel's failure to consult with Hall, discuss the case with Hall, or respond in any manner to Hall's requests to take certain actions with regard to the proceedings. After some questioning, the district court denied Hall's request and proceeded with the evidentiary hearing. The district court found insufficient evidence to support the resisting and obstructing an officer charge, but found Hall had violated probation by consuming drugs and alcohol and by refusing to submit to drug testing.[1] Thereafter, the district court revoked Hall's probation and executed the suspended sentence. Hall filed a Rule 35 motion for a reduction of sentence, which the district court denied. However, the district court did grant a subsequent motion Hall made regarding a request for credit for time served. Hall timely appeals and presents two issues: (1) whether the district court failed to make a sufficient inquiry into Hall's request for new counsel and abused its discretion in failing to appoint substitute counsel; and (2) whether the district court abused its discretion in denying Hall's Rule 35 motion for a reduction in sentence.

## II.
## DISCUSSION

### A.      Request for Appointment of Substitute Counsel

Both the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution guarantee the right to counsel for criminal defendants. The right to counsel does not necessarily mean the right to an attorney of one's own choosing. *State v. Lippert*, 145 Idaho 586, 594, 181 P.3d 512, 520 (Ct. App 2007) (*Lippert I*). Mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *Id*; *State v. McCabe*, 101 Idaho 727, 729, 620 P.2d

---

[1]      The district court also later found Hall had violated his probation by failing to do as requested by his probation officer and by having contact with a person he was prohibited from engaging with under a no-contact order, alleged by the State in an addendum to the motion alleging probations violations.

300, 302 (1980). A trial court has discretion whether to appoint substitute counsel for an indigent defendant upon a showing of good cause. Idaho Code § 19-856; *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980); *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct. App. 1997). Upon being made aware of problems between the defendant and counsel, the trial court must afford the defendant a full and fair opportunity to support the request for appointment of substitute counsel. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002.

Hall asserts the district court erred by not providing him a full and fair opportunity to present facts regarding his request for substitute counsel. Should we find the district court made a sufficient inquiry, Hall asserts the district court erred in failing to find good cause for appointing new counsel. The State responds that Hall failed to show the inquiry by the district court was insufficient to provide Hall a full and fair opportunity to support the request for new counsel and that Hall failed to show good cause supporting such an appointment.

1.      **Full and fair opportunity to support the request**

The trial court must conduct a meaningful inquiry to determine whether a defendant possesses good cause for his or her request for substitute counsel. *Lippert I*, 145 Idaho at 596, 181 P.3d at 522. Specifically, the district court must make some reasonable, nonsuggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution. *Id*. Even when the trial court suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, perfunctory questioning is not sufficient. *Id*.

Beginning with the Idaho Supreme Court's decision in *Clayton*, 100 Idaho 896, 606 P.2d 1000, we look at what constitutes a sufficient inquiry to provide the defendant a full and fair opportunity to support a request for substitute counsel. In *Clayton*, the defendant argued the district court's inquiry into the alleged conflict between himself and his counsel was insufficient upon his request for substitution of counsel. *Id*. at 897, 606 P.2d at 1001. There, the district court allowed the defendant to make statements regarding the reasons why he was requesting a substitution of counsel, but the court did not elicit any detailed facts from the defendant through additional questioning. The Idaho Supreme Court concluded that more inquiry was not required,

4

as the trial court should not be required to act as advocate for the defendant in a criminal proceeding. *Id*. at 898, 606 P.2d at 1002. Where the court afforded the defendant an opportunity to present the facts and reasons in support of the motion for substitution of counsel, the obligation of the court was met. *Id*.

In contrast, in both *Peck*, 130 Idaho 711, 946 P.2d 1351 and in *Lippert I*, 145 Idaho 586, 181 P.3d 512, this Court found that the trial courts, respectively, did not provide the defendant a full and fair opportunity to explain the reasons for wanting substitute counsel. In *Peck*, the magistrate made no inquiry into the defendant's dissatisfaction with his counsel when denying the request to discharge defense counsel and, on a later motion by the defendant, the magistrate cut the defendant off from speaking and simply dismissed the motion as an attempt to manipulate the system. *Peck*, 130 Idaho at 712, 946 P.2d at 1352. We concluded that, without any indication that Peck was afforded an opportunity to support his request, we could not review the merits of the request and the case needed to be remanded for further proceedings in order for the trial court to determine whether there was good cause to discharge counsel or whether the defendant wished to represent himself. *Id*. at 714, 946 P.2d at 1354; *see also State v. Nath*, 137 Idaho 712, 715, 52 P.3d 857, 860 (2002) (finding the defendant was not allowed to speak on his request for substitute counsel and was not given the opportunity to explain his reasons). In *Lippert I*, the defendant made complaints about appointed counsel at two different occasions prior to trial--at a pretrial hearing and on the first day of trial. The district court did not prevent Lippert from voicing his concerns, heard appointed counsel speak to the issue, and conducted an adequate inquiry into Lippert's complaints at the time of the first complaint. However, on the morning of the first day of trial, Lippert protested again about defense counsel's representation claiming a lack of communication and preparation for trial. Instead of inquiring further and questioning appointed counsel about the validity of Lippert's complaints, the district court merely asked counsel if he had anything to add and then proceeded to trial. *Lippert I*, 145 Idaho at 594, 181 P.3d at 521-22. Yet, Lippert continued to maintain that counsel did not represent Lippert. We concluded that the district court failed to adequately address Lippert's complaints or make any meaningful determination regarding Lippert's complaints. *Id.* at 596, 181 P.3d at 522.

Most recently, however, this Court reiterated the holding in *Clayton*, that a trial court is not required to act as advocate for the defendant when inquiring about the defendant's

5

dissatisfaction with defense counsel. *State v. DeWitt*, 153 Idaho 658, 663, 289 P.3d 60, 65 (Ct. App. 2012). There, DeWitt expressed his desire to obtain different counsel on the morning of trial. Defense counsel explained that his client was not satisfied with the way he was being represented. The district court allowed DeWitt to comment. DeWitt stated that he did not feel as though the attorney was working in DeWitt's best interest and that defense counsel had failed to follow up on various requests DeWitt had made of him. *Id.* at 660, 289 P.3d at 62. From the record, we concluded it was unclear whether, at that point, DeWitt trailed off or whether the district court cut him off from further comments. *Id.* at 663, 289 P.3d at 65. In the absence of confirmation of one situation or the other, we determined we would not presume error by the district court in failing to provide DeWitt a full and fair opportunity to present his reasons for wanting to obtain different counsel. From the record, we could not conclude DeWitt was deprived of the opportunity to support his request where he was allowed to make statements in support of his request. *Id.*

Turning to the facts of this case, we examine the record of the evidentiary hearing where Hall made the request for appointment of substitute counsel. The first matter addressed by the district court was Hall's request to make a statement. Thereafter, the following exchange took place:

[Hall]: Your Honor, I would like to start by respectfully asking the Court to appoint me different representation. I feel I'm not properly being represented by [defense counsel]. She's made no attempt to come and see me to discuss my case in any way. She's failed to put in a couple of different motions I've asked for. She will not answer my phone calls. And she's not collected any of the evidence I've asked her to.

[The Court]: All right. Specifically, you have requested that she get certain evidence for you?

[Hall]: Well, I just wanted some of the voice recordings from the night of the arrest from in the booking room.

[The Court]: Okay. Has she come to see you?

[Hall]: Not at all.

[The Court]: Have you had any contact with her?

[Hall]: No. I talked to her one time.

[The Court]: Not even in court?

[Hall]: Well, I had court for a misdemeanor that goes along with this charge. And once I bonded out, I was out for two days. But like the day after I bonded out, I had court on the misdemeanor, and I seen her there. I told her I wanted to come in to fight the misdemeanor. I asked her if she put in a motion to continue this

6

hearing until I was done with that misdemeanor. I have a trial for it on March 22nd. She said she would, and she never did that. Yeah. She hasn't--I tried to call her office numerous times from here. No one answers the calls. I wrote letters. No one comes to see me, anything.

[The Court]: All right.

[Hall]: I've not talked to her at all concerning this case.

The district court then told Hall he had that right to hire his own lawyer. The district court also told Hall that, although the contact with defense counsel may not be the exact schedule Hall would wish, as long as the lawyer was providing objectively competent representation, the court was not going to appoint separate counsel. No further questioning or inquiry took place.

Based on the foregoing, we cannot find that Hall was deprived of a full and fair opportunity to state the reasons he had for wanting appointment of substitute counsel. Not only did the district court allow Hall to provide specific facts regarding his view of inadequate representation, the district court also inquired as to what evidence was requested that defense counsel failed to obtain, whether she had met with the defendant, what the contact was between the attorney and client, and so on. This was not a situation, as in *Peck* and *Nath*, where the defendant was not allowed to speak, nor do we find it akin to the situation in *Lippert I* where the defendant adamantly maintained that defense counsel did not represent him, requiring further inquiry by the court. Rather, here, Hall was allowed to make statements regarding the reasons why he was requesting a substitution of counsel. The district court's questions were not perfunctory, but directly pertained to the matters to which Hall spoke. The district court's inquiry was sufficient.

### 2. Good cause

We now look to whether the district court erred in failing to find good cause for appointment of substitute counsel. Good cause may exist where there is an actual conflict of interest, an irrevocable breakdown of communication, or an irreconcilable conflict that leads to an apparently unjust verdict. *Lippert I*, 145 Idaho at 596-97, 181 P.3d 522-23. Factors to be used in examining the constitutional implications of a total breakdown in communication include: (1) whether the defendant's motion for new counsel was timely; (2) whether the trial court adequately inquired into the defendant's reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to

the communication breakdown. *United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir. 2002); *see also Lippert I*, 145 Idaho at 596-97, 181 P.3d at 522-23 (citing *Lott* and noting good cause includes actual conflict of interest, complete breakdown of communication, or irreconcilable conflict that leads to an apparently unjust verdict). A finding of good cause will not be supported by a defendant's abusive or uncooperative behavior. *Lippert I*, 145 Idaho at 597, 181 P.3d at 523. Finally, the decision of whether to appoint substitute counsel lies within the discretion of the trial court and will only be reviewed for an abuse of discretion. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choice before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Hall asserts he showed good cause for appointment of substitute counsel and relies on the ground of an irrevocable breakdown of communication between attorney and client. In *State v. Lippert*, 152 Idaho 884, 276 P.3d 756 (Ct. App. 2012) (*Lippert II*), this Court specifically addressed what constitutes an irrevocable breakdown of communication in an attorney-client relationship. We noted the district court considered whether the conflict between Lippert and his trial counsel "was so great that it led to a total lack of communication and precluded an adequate defense" and found the relationship had not so deteriorated as to meet that standard. *Id.* at 887-88, 276 P.3d at 759-60. We concluded the district court considered the appropriate factors and that the record, displaying the communication between counsel and the defendant and the attorney's representation, supported the district court's finding that good cause did not exist to substitute counsel. *Id.* at 888-89, 276 P.3d at 760-61.

In reviewing the record, we note that defense counsel in Hall's case had been appointed to the case less than one month before the evidentiary hearing on the probation violations. In that amount of time, defense counsel had filed a motion to continue a hearing on a bond motion, requested a continuance on the evidentiary hearing resulting in an additional five days of time, moved to quash discretionary days that Hall was serving at the time, requested that Hall be released on his previously posted bond (which the court denied), and--by Hall's own account--had represented Hall on an appearance in relation to a misdemeanor charge separate

from the probation violation proceedings. Although Hall asserted that defense counsel failed to file some motions, he did not indicate what those motions would have been and whether they were apart from those that counsel did file on Hall's behalf. As to evidence that Hall claimed he had asked defense counsel for, he did not make clear whether the evidence was in relation to the probation violation evidentiary hearing or the misdemeanor charge set for trial weeks later for which counsel was also representing Hall. Moreover, Hall's contention that he and his attorney had not communicated at all is undermined by his assertions that he asked counsel for specific evidence and to file various motions. The district court also considered that, in the court's view of how defense counsel conducted her cases, Hall's defense counsel was very competent and that Hall had been unsatisfied with his prior counsel as well. It concluded by stating, "I do not find that you've presented enough for me to have another lawyer represented for you in this matter." The court was sensitive to Hall's situation that he was unable to hire his own lawyer, but in doing so, it did not, as Hall asserts, fail to recognize its obligation to provide Hall a meaningful opportunity to support his request for substitute counsel. Instead, we find that such inability by Hall does not present good cause for appointment of substitute counsel in the absence of some other severe conflict between the client and counsel. Hall did not present facts that show a total lack of communication that precluded an adequate defense. We find no abuse of discretion by the district court in determining that Hall did not show good cause for appointment of substitute counsel.

## B.     Denial of the Idaho Criminal Rule 35 Motion

The court may, after a probation violation has been established, order that the suspended sentence be executed or, in the alternative, the court is authorized under Rule 35 to reduce the sentence. *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992). A defendant may also file a motion seeking a reduction of his sentence after probation has been revoked pursuant to Rule 35. *State v. Hoskins*, 131 Idaho 670, 672, 962 P.2d 1054, 1056 (Ct. App. 1998). A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant

or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation, and retribution. *Hoskins*, 131 Idaho at 672, 962 P.2d at 1056. In our review of a sentence pronounced after revocation of probation, we will consider whether the sentence was excessive in light of the circumstances existing when the court revoked probation. *State v. Jensen*, 138 Idaho 941, 944, 71 P.3d 1088, 1091 (Ct. App. 2003); *State v. Coffin*, 122 Idaho 392, 393-94, 834 P.2d 909, 910-11 (Ct. App. 1992).

Hall argues the district court abused its discretion in failing to grant the motion because he presented new and additional information to the district court. In particular, Hall asserts the sentence is excessive in light of the fact that he expressed his willingness to submit to additional supervision through global positioning system (GPS) monitoring if placed back on probation and in light of his overall rehabilitative potential from his underlying substance abuse issues. The State responds that Hall did not present any "new" evidence or information and that the record contradicts Hall's claims of amenability to rehabilitation.

As to Hall's first contention, willingness to submit to GPS monitoring if placed on probation, it is simply an assertion to support the plea of leniency. However, a court is not obligated to modify the legal sentence. *State v Villarreal*, 126 Idaho 277, 281, 882 P.2d 444, 448 (Ct. App. 1994). Moreover, Hall's counsel told the district court at the probation evidentiary hearing that Hall was "willing to do whatever possible to stay on probation and prove to the Court that he can be successful." Therefore, the district court was aware, *prior* to revoking probation, of Hall's willingness to submit to supervision. In essence, this was not new or additional information in the Rule 35 motion. Although Hall's willingness to be supervised using GPS monitoring may show a desire and commitment to comply with probationary terms, the district court specifically found that, based on Hall's prior conduct under community supervision, he was not a candidate for continued probation at the time it was revoked. We respect the discretion of the trial court and will not supplant the trial court's views with our own. *State v. McGiboney*, 152 Idaho 769, 773, 274 P.3d 1284, 1288 (Ct. App. 2012).

10

Regarding Hall's rehabilitative potential, the record paints quite a different picture. Two months after Hall's transfer to drug court, he was required to serve discretionary days in jail for failure to attend drug court. Less than two months later, Hall was required to serve more discretionary days for further violation of drug court rules. This pattern continued as Hall served discretionary days again roughly seven months later, was subject to a bench warrant two months after that for more violations, failed to report two months later, and within a few more months was terminated from drug court. The district court thereafter revoked Hall's probation due to violations, one of which was Hall's consumption of drugs, and retained jurisdiction. In the addendum to the presentence investigation (APSI) report, the program manager at the facility where Hall was housed during the period of retained jurisdiction expressed concerns about Hall's amenability to treatment due to Hall's "lack of ability to learn from previous problems." The APSI report also noted that Hall was a reluctant participant in some of the programs at the correctional institution, though he did made some progress in addressing addictive and criminal thinking patterns. Although Hall indicated his intention to complete treatment in the community after the period of retained jurisdiction ended, the program manager still had concerns:

> [Hall] has demonstrated a limited amount of progress and has demonstrated that he will only accept feedback from both me and his peers in a very reluctant manner. Overall, his progress at [the correction institution] has been mediocre at best and he will most definitely pose a challenge to whoever supervises him in the community . . . .

Indeed, within one week after the court placed Hall on probation for a second time, Hall served more discretionary time because he consumed alcohol and methamphetamine and refused to submit to drug testing. The State filed another motion for revocation of probation shortly thereafter, which ultimately resulted in the execution of the previously suspended sentence. At the disposition hearing, the district court noted Hall's disregard for the rules of probation and that Hall did not learn from his time served during the period of retained jurisdiction. In its reconsideration of the sentence on Hall's Rule 35 motion, the district court cited to the facts that Hall had been given the benefit of drug court, was terminated from the program, was provided another chance during the period of retained jurisdiction, and still the conduct forming the basis for the probation violations and revocation occurred almost immediately upon Hall's release.

In light of the information in the record, Hall's confidence in his rehabilitative potential while subject to community supervision does not show that the sentence was excessive or

unreasonable under any view of the facts. We find no abuse of discretion by the district court in denying Hall's motion for a reduction in sentence.

## III.

## CONCLUSION

We conclude the district court provided Hall a full and fair opportunity to present facts supporting his request for substitute counsel and did not abuse its discretion in denying the request because Hall failed to show good cause. We further conclude the district court did not abuse its discretion in denying Hall's motion for a reduction in sentence after the revocation of his probation. Accordingly, we affirm the district court's orders revoking probation and denying the Rule 35 motion.

Judge LANSING and Judge MELANSON **CONCUR.**